[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 174.]

COLUMBUS BAR ASSOCIATION *v.* SCHLOSSER.

COLUMBUS BAR ASSOCIATION *v.* ELSASS.

**[Cite as *Columbus Bar Assn. v. Schlosser*, 1995-Ohio-14.]**

*Attorneys at law—Misconduct—Six-month suspension—Accepting employment when the exercise of professional judgment on behalf of a client will be or reasonably may be affected by attorney's own financial or personal interests—Drafting will naming attorney and his secretary as beneficiaries—Knowingly engaging in conduct contrary to a Disciplinary Rule.*

(Nos. 95-375 and 95-376—Submitted September 26, 1995—Decided December 20, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-47.

————————

{¶ 1} On August 16, 1993, relator, Columbus Bar Association, filed a complaint with the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") against respondents, Jacob A. Schlosser of Columbus, Ohio, Attorney Registration No. 0001381, and Tobias H. Elsass of Columbus, Ohio, Attorney Registration No. 0024436. The complaint charged respondents with violations of DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1-102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law), 5-101(A) (accepting employment when the exercise of professional judgment on behalf of a client will be or reasonably may be affected by his own financial or personal interests), 5-105(A) (accepting proffered employment if the exercise of professional judgment on behalf of a client

will be or is likely to be adversely affected), and 7-102(A) (knowingly engaging in conduct contrary to a Disciplinary Rule). The complaint also charged respondents with violating "the letter and spirit" of EC 5-5 (regarding gifts from clients), EC 5-6 (concerning the naming of executors), and EC 9-6 (regarding a lawyer's duty to avoid even the appearance of impropriety). A panel of the board heard the matter on September 2, 1994, and December 15, 1994.

{¶ 2} According to the evidence, on May 8, 1986, Bonita Barbery introduced Emma Gazarek, an eighty-nine-year-old widow, to Schlosser. Barbery had met Gazarek when Barbery came upon Gazarek walking on West Broad Street in Columbus with swollen feet and carrying a heavy load. Barbery offered her a ride home; Gazarek lived in an apartment just off Broad Street. Barbery visited with Gazarek several times over a period of a couple of weeks. On one occasion, Barbery met an individual to the husband of whom Gazarek had granted a power of attorney and whom Gazarek did not trust. To help free Gazarek from these individuals, Barbery took Gazarek to the Columbia Heights United Methodist Church. The church pastor referred her to Schlosser.

{¶ 3} On this occasion, Schlosser prepared a document to revoke the power of attorney and, on Gazarek's instructions, prepared a will for Gazarek. In the will, Gazarek named Barbery and the Columbia Heights United Methodist Church as equal beneficiaries of her estate. Barbery expressed a lack of interest in being named a beneficiary, but Gazarek nevertheless executed this will. Schlosser also drafted a document that named Barbery as Gazarek's attorney-in-fact.

{¶ 4} Gazarek then took up residence with Barbery's mother, who lived near Barbery in Mount Sterling. On May 19, 1986, Gazarek returned to Schlosser's office and directed him to draft a new will naming Barbery and Barbery's mother as equal beneficiaries of her estate, removing the church from the will.

{¶ 5} Gazarek, before long, had a falling out with Barbery and her mother and decided to move back to Columbus. On June 17, 1986, Barbery brought

Gazarek to Columbus, and Gazarek appeared in Schlosser's office. Schlosser did not know quite what to do to help her, so he contacted Elsass, Schlosser's former associate, with whom Schlosser's firm conducted some business. Elsass concentrated his practice in probate law.

{¶ 6} On June 19, 1986, Elsass, in assisting Gazarek, filed an application with the Franklin County Probate Court to appoint Schlosser as guardian for the estate and person of Gazarek. In the course of applying for the guardianship, Elsass sent Gazarek to Dr. Evan Halas for an evaluation. Dr. Halas reported that:

"On examination she showed some memory impairment but the most striking aspect of her mental disorder was a paranoid distrust and secretiveness leading to misinterpretation of events around her, hence the drifting lifestyle. From a clinical standpoint she would fit into the category of Organic Mental Disorder with paranoid features.

"In light of the mental and physical impairment, and with her poor judgment resulting from mental disorder, I would recommend that a guardian be assigned for the management of her affairs."

{¶ 7} On June 25, 1986, the court appointed Schlosser as guardian of the person and estate of Gazarek; her estate totaled approximately $150,000. Schlosser served as Gazarek's guardian, and Elsass as the attorney for the guardianship, until Gazarek's death of pancreatic cancer on December 11, 1991. Schlosser and Elsass took charge of Gazarek's affairs, paying her bills and preserving her estate. Monthly, Schlosser, or someone from his office, personally delivered money to Gazarek for an allowance. At her death, Gazarek's estate was worth approximately $161,000. Schlosser and Elsass each charged fees for each one's service to the guardianship. They aggregated the fees and divided the total equally.

{¶ 8} In early July 1986, Gazarek informed Schlosser that she desired to write another will. He had her contact Elsass, who sent an associate and a law clerk to interview her.

**{¶ 9}** She directed the associate lawyer to draft a will naming Schlosser, his secretary, and Elsass's law clerk, who had befriended Gazarek, as beneficiaries. The associate informed Schlosser's secretary of Gazarek's wishes, who informed Schlosser. After some deliberation, Schlosser decided to allow this will to be drafted without intervening. Moreover, he failed to inform Elsass of the two wills he had drafted for Gazarek in May. Elsass, nevertheless, then discussed with Schlosser naming Schlosser as executor; he neither advised Schlosser nor discussed with him the propriety of naming Schlosser as beneficiary. Gazarek executed the will on August 21, 1986, which Elsass and the associate witnessed.

**{¶ 10}** Later, Gazarek contacted Elsass and directed him to draft another will for her. In this will, Gazarek deleted Elsass's law clerk as beneficiary and named Schlosser and his secretary as equal beneficiaries. Gazarek signed this will on November 6, 1986, and Schlosser received a copy of it. Gazarek signed no further wills during her life.

**{¶ 11}** At Gazarek's death, Elsass filed the will with the probate court to administer Gazarek's estate. In proceeding with this, Elsass discovered heirs that Gazarek had not mentioned. These heirs filed a will contest challenging the November 1986 will, alleging undue influence on Gazarek by Schlosser and Elsass.

**{¶ 12}** Probate Judge Lawrence A. Belskis, on reviewing the will contest, remembered that he had represented Gazarek when he was in private practice and recused himself from the case. In any event, the conduct of Elsass and Schlosser in drafting wills naming Schlosser and his secretary as beneficiaries appeared to him to be improper. Belskis, based on his dealings with Gazarek, believed that she was a vulnerable individual and that Schlosser and Elsass had taken advantage of her. Consequently, he wrote a letter to relator complaining about these circumstances.

**{¶ 13}** After the hearing, the panel concluded that Schlosser and Elsass had violated DR 5-105(A), 7-102(A), and EC 5-5. The panel concluded that Elsass was

not totally independent from Schlosser, since they had co-counseled cases in the past. The further attempt by Gazarek to name Elsass's law clerk, according to the panel, "should have set off alarm bells that perhaps this client had a serious problem regarding her competency to make a will." The panel concluded that Elsass should not have accepted employment to prepare either of the two wills given his relationship with Schlosser.

{¶ 14} As to Schlosser, the panel ruled that he erred in allowing Gazarek to name him and his secretary as beneficiaries in a six-figure will after knowing her for only several weeks. He never talked to her or Elsass either about her reasons for naming him or about the ethical propriety of doing so. The panel concluded that he should have informed Elsass about the previous two wills and "her proclivity to change her wills based upon the circumstances and who was patronizing her at the time. He relied upon Elsass as being a disinterested, independent person when he was clearly not." Two members of the panel found a public reprimand of Schlosser and Elsass to be an appropriate sanction. The panel chair dissented and recommended a six-month suspension for both attorneys.

{¶ 15} The board adopted the findings of fact and conclusions of the panel. However, it adopted the recommendation of the panel chair. The board, accordingly, recommended that Schlosser and Elsass be suspended from the practice of law in Ohio for six months.

_____

*Bruce A. Campbell*, *Michael J. Hardesty* and *Gail D. Patrick*, for relator.

*Messerman & Messerman Co., L.P.A.* and *Gerald A. Messerman, Lewis Williams* and *John J. Duffey*, for respondent Schlosser.

*Cooper, Walinski & Cramer*, *Cary Rodman Cooper* and *Richard S. Walinski*; *Moots, Cope & Stanton* and *Benson A. Wolman*, for respondent Elsass.

_____

*Per Curiam.*

**{¶ 16}** After full review of the record, we agree with the board's findings, except for its finding of a violation of EC 5-5. The Ethical Considerations are "aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations." Preface, Code of Professional Responsibility. The Disciplinary Rules, by contrast, are "mandatory in character." *Id.* They state the "minimum level of conduct *below which no lawyer can fall without being subject to disciplinary action.*" (Emphasis added.) *Id.* Thus, a violation of the Disciplinary Rules, not the Ethical Considerations, subjects an attorney to discipline.

**{¶ 17}** Nevertheless, we conclude that the respondents' violations of DR 5-105(A) and 7-102(A) are sufficiently serious in themselves to warrant the sanctions recommended by the board. Accordingly, we suspend respondents from the practice of law for six months and tax costs to them.

*Judgment accordingly.*

DOUGLAS, ACTING C.J., HARSHA, WRIGHT, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER, J., dissents and would dismiss the causes.

WILLIAM H. HARSHALL III, J., of the Fourth Appellate District, sitting for MOYER, C.J.

_____